UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2026 MAR 17 AM II: 25

CLERK

BY_____
DEPUTY CLERK

LANSANA MANSARAY,              )
                               )
        Plaintiff,             )
                               )
    v.                         )        Case No. 2:24-cv-1101
                               )
U.S. CITIZENSHIP AND IMMIGRATION )
SERVICES and LAURA B. ZUCHOWSKI, )
                               )
        Defendants.            )

**ORDER ON MOTION TO DISMISS**
**(Doc. 29)**

Plaintiff Lansana Mansaray, representing himself, brings this action against the United

States Citizenship and Immigration Services ("USCIS") and Laura B. Zuchowski, the Director of

USCIS's Vermont Service Center, challenging USCIS's denial of Mr. Mansaray's Violence

Against Women Act ("VAWA") self-petition. He argues that the denial violated his right to due

process under the Fifth Amendment and was arbitrary and capricious under the Administrative

Procedure Act ("APA") 5 U.S.C. § 706. Mr. Mansaray seeks declaratory relief and injunctive

relief ordering USCIS to reopen and re-adjudicate his VAWA petition. Currently pending is

Defendants' Motion to Dismiss for lack of subject-matter jurisdiction. (Doc. 29.) Mr. Mansaray

has filed a response to the motion (Doc. 32), and the Government filed a reply (Doc. 35). The

court also allowed Mr. Mansaray to file a surreply. (Doc. 36-1.)

## Factual Background

The court draws the following facts from the Third Amended Complaint (Doc. 18), the documents attached to that pleading, and the exhibits attached to Defendants' Motion to Dismiss.[1]

Mr. Mansaray is a native and citizen of Sierra Leone. (Doc. 29-2 at 1.) He first arrived in the United States in 2006 on a B-1 temporary business visitor visa. (*Id.*) When the visa expired, Mr. Mansaray stayed in the U.S. (*Id.*) The Department of Homeland Security ("DHS") served him with a Notice to Appear in immigration court in April 2007 due to his visa overstay. (*Id.*) An immigration judge ordered his removal to Sierra Leone on May 28, 2009 (Doc. 29-3), and the Board of Immigration Appeals ("BIA") affirmed the order on November 24, 2010 (Doc. 29-4). The BIA denied Mr. Mansaray's motion to reopen his immigration proceedings on April 29, 2011. (*Id.*)

DHS did not immediately execute the order of removal, so Mr. Mansaray remained in the United States. In August 2011, he married a U.S. citizen with whom he had two children. (Doc. 29-6 at 1; Doc. 18 at 2–3; Doc. 18-4 at 1.) Mr. Mansaray's spouse became abusive, however, and the relationship ended. (Doc. 29-6 at 1.) On February 21, 2017, on the basis of that abuse, Mr. Mansaray filed a VAWA self-petition (Doc. 18-1 at 1), a type of petition that a noncitizen can file to obtain legal permanent resident ("LPR") status in the United States if they were abused by their U.S. citizen spouse, 8 U.S.C. § 1154(a)(1)(A)(iii). To be eligible for LPR status as a VAWA self-petitioner, the applicant must demonstrate that they are "a person of good moral character." *Id.* § 1154(a)(1)(A)(iii)(II)(bb).

---

[1] On a motion to dismiss for lack of subject matter jurisdiction, the court may consider evidence outside of the pleadings. *Morrison v. Nat'l Australia Bank*, 547 F.3d 167, 170 (2d Cir. 2008).

2

On April 27, 2017, just two months after Mr. Mansaray filed his VAWA self-petition, DHS deported him to Sierra Leone. (Doc. 18 at 3.) His deportation followed on the heels of his arrest on August 23, 2016, for two counts of Endangering Welfare of Children, a third-degree felony in Pennsylvania. (Doc. 29-5 at 2; Doc. 18-4 at 3; Doc. 18 at 3.) Mr. Mansaray pled guilty to two counts of misdemeanor Endangering Welfare of Children and served a five-month sentence. (Doc 18-9 at 2; Doc. 18 at 3.) DHS took custody of Mr. Mansaray upon his release and held him for 95 days before ultimately deporting him. (Doc. 29-6 at 1; Doc. 18 at 3.)

The events underlying his August 2016 arrest became a primary focus in USCIS's evaluation of Mr. Mansaray's VAWA self-petition, particularly with respect to USCIS's determination regarding his good moral character. In August 2018, USCIS sent Mr. Mansaray a Request for Evidence ("RFE") explaining that the evidence Mr. Mansaray had submitted regarding his good moral character was insufficient given his criminal history. (Doc. 18-5.) The RFE also highlighted an order of protection placed on him by a friend, P.K.,[2] and a record in his administrative filing "indicat[ing] that [he] may have been a person of interest for a sex assault charge on June 27, 2014." (*Id.* at 3.)

As detailed by USCIS, Mr. Mansaray included the following evidence of good moral character in his initial filing:

- A personal statement giving Mr. Mansaray's account of the events leading to his arrest in August 2016;

- A personal statement explaining how Mr. Mansaray became a missionary to many individuals while he was incarcerated;

---

[2] The court uses initials to protect the identity of Mr. Mansaray's friend.

- An affidavit from P.K. "explain[ing] how [Mr. Mansaray was] trustworthy, dependable, kind, and a wonderful father to [his] children";

- Affidavits from several community members attesting to Mr. Mansaray's honesty, ambition, and active involvement in the church community; and

- A copy of a Pennsylvania State Police Response for Criminal Record Check.

(*Id.* at 2–3.)

Regarding his arrest for child endangerment, Mr. Mansaray's personal statement explained that, on the day in question, Mr. Mansaray and his five- and six-year-old sons were preparing to leave home, and Mr. Mansaray asked his sons to "take their seats." (Doc. 29-6 at 2.) According to Mr. Mansaray, he "meant for them to be seated in the car and buckled up." (*Id.*) The children allegedly misunderstood the request because, although Mr. Mansaray had a car, P.K. regularly allowed him to use her car when he took longer trips because it had better gas mileage. Believing they would be traveling in P.K.'s car, Mr. Mansaray's sons removed their car seats from Mr. Mansaray's car, walked to the spot where P.K. usually dropped off her car, and stood there waiting. (*Id.*) In the meantime, Mr. Mansaray got in his car and drove away without checking if his children were in the back seat. When he realized his sons were not there, he rushed home, only to be arrested for child endangerment. (*Id.*)

In the RFE, USCIS explained that Mr. Mansaray's personal statement and his other evidence of good moral character were insufficient to meet his burden of proof given the serious nature of his charges, his guilty plea, and his five-month incarceration. USCIS stated that the letters of support Mr. Mansaray submitted described his positive attributes and contributions to his community but "d[id] not provide sufficient details of [his] criminality" and therefore "h[e]ld little evidentiary weight." (*Id.* at 3.) USCIS also faulted Mr. Mansaray for failing to submit

4

copies of arrest reports, court documents showing the final disposition of any possible charges related to the protection order and allegation of sexual assault, or "relevant excerpts of law for th[e] jurisdiction showing the maximum possible penalty for possible charges." (*Id.*)

The RFE closed by providing Mr. Mansaray with the following instructions:

Submit evidence of your good moral character. Evidence of good moral character is your own affidavit attesting to your good moral character and criminal history, if any.

- Your affidavit should be supported by criminal history clearances or records from each place you resided for at least six months during the 3-year period before filing your Form I-360 [VAWA self-petition]. If you have resided outside the United States during this 3-year period, you should submit criminal clearances from those locations. . . .

- If criminal history records, police clearances, or similar reports are not available for some or all locations, you should submit an explanation for why they are not available and other evidence to support your affidavit. Such evidence may include affidavits from responsible persons who can knowledgeably attest to your good moral character.

If you have been arrested or charged with any crime, please submit the following:

1. Copies of arrest report(s);
2. Certified copies of court documents showing final disposition of the charge(s); and
3. Relevant excerpts of law for that jurisdiction showing the maximum possible penalty for each charge.

In addition to the evidence requested above, you may also choose to submit any other evidence of positive factors you want USCIS to consider in determining whether you are a person of good moral character:

Evidence of positive factors may include:

1. Employment and payment of taxes.
2. Community involvement and/or service.
3. Any evidence of rehabilitation from any negative factors set forth in your case.

(*Id.* at 3–4.)

In response to the RFE, Mr. Mansaray submitted the following:

- A personal statement;

- Court orders from Venango County, Pennsylvania;

- A Final Protection from Abuse Order from P.K.;

- His plea agreement on the August 2016 child endangerment charges;

- A Pennsylvania Commission Sentencing Guidelines Form; and

- A Pennsylvania State Police Response for Criminal Record Check.

(Doc. 29-7 at 2.) Determining that this evidence was insufficient, USCIS issued Mr. Mansaray a Notice of Intent to Deny ("NOID") on October 25, 2019, giving Mr. Mansaray a final opportunity to submit additional evidence. (Doc. 29-7.)

As with the RFE, the NOID explained the deficiencies with Mr. Mansaray's evidence. First, USCIS acknowledged that Mr. Mansaray's personal statement discussed the events leading up to the child endangerment charge, the circumstances of the protection order from P.K., and how the sexual assault charge occurred. (*Id.* at 2.) USCIS concluded that the statement gave "some evidentiary weight" toward the good moral character standard but, by itself, "d[id] not establish [Mr. Mansaray's] good moral character." (*Id.*) The NOID also acknowledged the other evidence Mr. Mansaray submitted but deemed it insufficient because he "did not submit copies of arrest report(s)." (*Id.*) The NOID concluded by providing the same instructions as the RFE regarding additional evidence that Mr. Mansaray should submit. (*Id.* at 3.) It also informed Mr. Mansaray that, if he was "unable to submit the documentation requested by USCIS" he should "submit a statement explaining why this documentation [was] unavailable to [him]." (*Id.* at 4.)

In response to the NOID, Mr. Mansaray submitted a personal statement; a request to the Oil City Police Department to release an arrest report; an affidavit from a coworker; and Bible leadership certificates and a diploma from the Word of Faith church. (Doc. 18-4 at 7.) In his

personal statement, Mr. Mansaray explained that he tried to request his arrest report from the Oil City Police Department when USCIS issued the RFE but could not get it because he was required to go in person—an impossibility given his deportation from the U.S. (*Id.*) The statement also explained that, when he received the NOID, Mr. Mansaray sent a fax to the Oil City Police Chief requesting a release of his arrest report but that the request was denied." (*Id.*) Finally, he stated that, since his last arrest, he had not been convicted of any crime that would render him inadmissible or deportable, that the child endangerment charges "brought against [him] were as a result of the plethora and negativity in peoples lives," and that Mr. Mansaray had "worked very hard to support [his] children and make [him]self useful to [his] community." (*Id.*)

On November 19, 2021, USCIS denied Mr. Mansaray's VAWA self-petition. (Doc. 18-4.) Regarding his personal statement, USCIS reasoned that,

> [a]lthough you state that you haven't been convicted of any felony since your last arrest and that you have worked very hard to support your children, the seriousness of the arrests and failure to provide police reports make it unclear as to the specific situation that led to your arrest.

(*Id.* at 7.) USCIS went on to state that, although it acknowledged that he submitted evidence that he requested his arrest report from the Oil City Police Department, that evidence "is insufficient because it does not address the events that led up to all these arrests to help USCIS make a favorable decision regarding your good moral character." (*Id.*) As to the affidavit and leadership certificates, USCIS concluded that those "pieces of evidence are insufficient because they do not provide any information relating to your criminal history." (*Id.*)

In conclusion, USCIS provided the following explanation of its denial:

> After a review of all of the evidence in its totality, USCIS cannot reach a favorable decision. The record does not contain satisfactory evidence to demonstrate your qualification under this requirement because you did not provide your arrest record relating to your criminal charge of Endangering Welfare of Child by two counts (184304A1), and it is unclear to USCIS the events that took place prior to your

7

arrest to help USCIS make a determination that you are a person of good moral character. Further, evidence from your administrative record also indicated that you pled guilty to your charge of Endangering Welfare of Child M1 and [were] sentenced on December 28, 2016, to confinement for not less than five months and not more than 24 months less than one day, a fine of $250 dollars, and one year probation. Your evidence also showed that you were deported from the United States and returned to Sierra Leone on April 25, 2017; however, it did not establish the period of time that you were actually confined prior to your deportation. Therefore, the record does not contain satisfactory evidence to demonstrate your qualification under this requirement.

(*Id.*)

One January 21, 2021, Mr. Mansaray submitted a Motion to Reconsider with USCIS. (Doc. 29-8.) USCIS denied the motion (Doc. 29-9), as well as Mr. Mansaray's subsequent Motion to Reconsider the denial of his *first* Motion to Reconsider (Doc. 29-10). This lawsuit followed.

## Rule 12(b)(1) Standard

"Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Australia Bank*, 547 F.3d 167, 170 (2d Cir. 2008). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Liranzo v. United States*, 690 F.3d 78, 84 (2d Cir. 2012). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside of the pleadings." *Morrison*, 547 F.3d at 170.

## Analysis

In his Third Amended Complaint, Mr. Mansaray raises several arguments that, in his view, warrant a new adjudication of his VAWA self-petition. Broadly, he faults USCIS for the following:

8

- Relying on an arrest report from the Oil City Police Department that named Mr. Mansaray as a person of interest in a sexual assault, even though Mr. Mansaray did not have the opportunity to review the report himself;

- Improperly relying on the Order of Protection from Abuse filed by P.K., which Mr. Mansaray states was a violation of his due process rights and VAWA confidentiality safeguards located at 8 U.S.C. § 1367;

- Relying on the criminal complaint that led to Mr. Mansaray's child endangerment charges, which Mr. Mansaray claims contained "material falsehoods" and which Mr. Mansaray never had the opportunity to review;

- Disregarding favorable evidence of Mr. Mansaray's good moral character; and

- Faulting Mr. Mansaray for failing to submit arrest records and other evidence to which he did not have access.

(*See generally*, Doc. 18.)

In response to these claims, the Government notes that the Immigration and Nationality Act ("INA") contains several so-called "jurisdiction stripping" provisions that prohibit district courts from reviewing various types of claims over which they would otherwise have jurisdiction. Specifically, the Government invokes 8 U.S.C. § 1252(a)(2)(B) to argue that the court cannot review Mr. Mansaray's claims. That statute provides, in relevant part, that district courts have no jurisdiction to review

> any . . . decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

9

8 U.S.C. § 1252(a)(2)(B)(ii). The subchapter referenced is subchapter II. In turn, 8 U.S.C. § 1154(a)(1)(A)(iii), which is found in subchapter II, governs the filing of VAWA self-petitions, and subsection (a)(1)(J) of that statute provides, in relevant part, as follows:

> In acting on petitions filed under clause (iii) or (iv) of subparagraph (A) . . . , the Attorney General shall consider any credible evidence relevant to the petition. The determination of what evidence is credible and the weight to be given that evidence shall be within the sole discretion of the Attorney General.

*Id.* § 1154(a)(1)(J).

In the Government's view, all of Mr. Mansaray's claims amount to complaints about how USCIS weighed the evidence in his case and what determinations it made as to the credibility of the evidence it reviewed. Thus, says the Government, § 1252(a)(2)(B)(ii) strips this court of jurisdiction to consider any of Mr. Mansaray's claims. Mr. Mansaray responds that the cases the Government cites are distinguishable because he does not simply challenge the "weighing of disclosed evidence within the agency's discretion." (Doc. 32 at 6.) Instead, he "challenge[s] reliance on secret, inaccessible, and fabricated evidence; violation of the confidentiality mandate of § 1367; imposition of impossible burdens; and disregard of favorable proof," all of which "are legal and constitutional questions" that fall under § 1252(a)(2)(D)'s exception to the jurisdictional bar.

## I.     The Court Cannot Review Credibility and Weight Determinations

The court agrees with the Government that many of Mr. Mansaray's claims ask the court to do what § 1252(a)(2)(B)(ii) expressly forbids: review USCIS's findings as to the credibility and weight of the evidence in Mr. Mansaray's VAWA application. This court faced the same issue in *Lakhani v. U.S. Citizenship & Immigration Services*, 817 F. Supp. 2d 390 (D. Vt. 2011). As here, the petitioner challenged the merits of USCIS's decision on his VAWA application. Specifically, he argued that USCIS should not have considered his conviction for battery or an

10

order of protection issued against him. *Id.* at 393. He also challenged USCIS's determination as to the credibility of his own explanation of his actions. *Id.* The court concluded that § 1252(a)(2)(B)(ii) stripped it of jurisdiction to consider USCIS's credibility and weight determinations because such determinations were "specified . . . to be in the discretion of the Attorney General or the Secretary of Homeland Security . . . ." *Id.* (alterations in original; quoting 8 U.S.C. § 1252(a)(2)(B)(ii)).

Beginning with the arrest report naming Mr. Mansaray as a person of interest in a sexual assault, the court acknowledges Mr. Mansaray's argument that it violates due process for USCIS to rely on "unverified, third-party police records." (Doc. 18 at 5.) But the INA expressly gives the Attorney General the discretion to make credibility determinations in VAWA cases, and USCIS concluded in this case that the police records were credible. 8 U.S.C. § 1154(a)(1)(J). The court cannot review that credibility determination, and there is no rule prohibiting USCIS from considering arrest records in its adjudication of VAWA applications. For the same reasons, the court cannot review USCIS's conclusion that the criminal complaint leading to Mr. Mansaray's conviction was credible and deserving of significant evidentiary weight.

As for the Order of Protection, the court once again has no jurisdiction to review the weight USCIS gave to the order. Nor does the evidence fall within § 1367's prohibition on relying on certain types of evidence. That statute forbids reliance on "information furnished solely by" persons who have battered the noncitizen or the noncitizen's child, who perpetrated a crime against the noncitizen the commission of which serves as the basis of an application for U nonimmigrant status, or who trafficked the noncitizen. 8 U.S.C. § 1367(a)(1). Mr. Mansaray has presented no evidence and makes no argument that P.K., the person who requested the Order of Protection, falls into any of those categories.

11

## II.   Opportunity to Inspect Evidence

In the Third Amended Complaint and in his briefing, Mr. Mansaray argues that it violates due process and the APA for USCIS to consider evidence that an applicant has not had the opportunity to inspect and, therefore, meaningfully rebut. (*See* Doc. 18 at 5.)  The Government replies that, under 8 C.F.R. § 103.2(b)(16)(i), USCIS is only required to advise an applicant of the *existence* of derogatory information of which the petitioner is unaware and provide a chance for rebuttal; it need not provide the *actual document or source* of the derogatory information.  In this case, USCIS did exactly that: in the RFE, it informed Mr. Mansaray that it had uncovered the Order of Protection and arrest record for sexual assault and allowed him to submit evidence in response, but it did not provide him with the original documents.

It is not obvious to the court that USCIS complied with 8 C.F.R. § 103.2(b)(16).  The regulation provides that "[a]n applicant or petitioner shall be permitted to inspect the record of proceeding which constitutes the basis for the decision, except as provided in the following paragraphs." 8 C.F.R. § 103.2(b)(16).  In turn, § 103.2(b)(16)(i) requires USCIS to make a petitioner aware of derogatory information, as described by the Government and as explained above. *See Koffi v. Holder*, 487 F. App'x 658, 660 (2d Cir. 2012) (summary order) (general rule of § 103.2(b)(16)(i) is that "[t]he actual documents are not required to be disclosed").

However, that general rule is subject to the exceptions "in paragraphs (b)(16)(ii), (iii), and (iv) of this section." 8 C.F.R. § 103.2(b)(16)(i).  And § 103.2(b)(16)(ii) states that "[a] determination of statutory eligibility shall be based only on information contained in the record of proceeding which is *disclosed* to the applicant or petitioner." *Id.* § 103.2(b)(16)(ii) (emphasis added).  A determination of good moral character is a determination of statutory eligibility for a VAWA application.  Thus, to the extent that USCIS had arrest records or other derogatory

12

information in its possession, it was arguably required to "disclose" that information to Mr. Mansaray. *See Naiker v. USCIS*, 352 F. Supp. 3d 1067, 1078 (W.D. Wash. 2018) ("disclosure" under § 103.2(b)(16)(ii) means more than summarizing or making the petitioner aware of the information; the information itself must be made available).

The Government may argue that the procedures outlined in 8 C.F.R. § 103.2(b)(16) satisfy the requirements of due process and that "disclosure" does not require USCIS to furnish actual documents. But those are not jurisdictional arguments, and Mr. Mansaray's claims do not concern how USCIS weighed the evidence. Rather, Mr. Mansaray's claims concern his procedural right to inspect evidence so he can effectively rebut it. Before the court can consider dismissing these claims, the Government must properly present them in a 12(b)(6) motion to dismiss with thorough briefing.

## III.   Faulting Mr. Mansaray for his Failure to Provide Police Reports

The last issue Mr. Mansaray raises is USCIS's repeated emphasis on his failure to submit police reports that he could not obtain. In its reply, the Government argues that "[t]he fact that Plaintiff may have had difficulty accessing the arrest report upon being removed to Sierra Leone does not make the agency's request for that record unreasonable, particularly given that [Mr. Mansaray] was represented by counsel located in the United States." (Doc. 35 at 9.) The Government further contends that "the agency did not deny [Mr. Mansaray's] VAWA self-petition or otherwise penalize [him] on the basis of his failure to submit a copy of his arrest report." (*Id.*) Mr. Mansaray responds that in his surreply that "[t]he denial notice itself cites the 'failure to provide police reports' as a central reason for the adverse decision." (Doc. 36-1 at 6 (quoting Doc. 18-4 at 3).)

13

As framed by Mr. Mansaray, his claim does not concern how USCIS weighed the evidence. Rather, it concerns the due process issues that arise from denying an application based on the failure to submit a document that, by his account, Mr. Mansaray simply could not obtain. Those due process issues touch in particular on the *Accardi* doctrine, derived from *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), which stands for the general principle that "the rules promulgated by a federal agency, which regulate the rights and interests of others, are controlling upon the agency." *Montilla v. I.N.S.*, 926 F.2d 162, 166 (1991). As the Second Circuit has explained, "[t]he *Accardi* doctrine is premised on fundamental notions of fair play underlying the concept of due process," and "[i]ts ambit is not limited to rules attaining the status of formal regulations." *Id.* at 167.

> As the Supreme Court noted, "[w]here the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than would otherwise be required," and even though the procedural requirement has not yet been published in the federal register.

*Id.* (alteration in original; quoting *Morton v. Ruiz*, 415 U.S. 199, 235 (1974)).

In this case, USCIS's policy manual provides that "a self-petition may not be denied for failure to submit a particular piece of evidence." USCIS Policy Manual, Vol. 3, Part D, ch. 5, § B(2), https://www.uscis.gov/policy-manual/volume-3-part-d-chapter-5 [https://perma.cc/NA78 -5R5P]. Mr. Mansaray contends that USCIS did precisely that. The Government takes the opposite position.

No matter the appropriate outcome of Mr. Mansaray's claim, 8 U.S.C. § 1252(a)(2)(B) does not strip this court of jurisdiction to consider it. As noted above, Mr. Mansaray does not challenge how USCIS weighed the arrest report. He challenges the fact that USCIS allegedly denied his petition because he did not submit the police report. The Government raised only the

14

jurisdictional issue in the Motion to Dismiss, so it would be inappropriate at this stage for the court to dismiss Mr. Mansaray's claim on the merits.

### Conclusion

The Motion to Dismiss (Doc. 29) is GRANTED IN PART and DENIED IN PART. It is granted with respect to Mr. Mansaray's claims that USCIS improperly considered the arrest record for sexual assault, improperly considered Mr. Mansaray's conviction, improperly considered the Order of Protection, and disregarded positive evidence of Mr. Mansaray's good moral character. It is DENIED with respect to Mr. Mansaray's APA and Due Process claims regarding USCIS's failure to provide him with the evidence it was using against him and their alleged decision to deny his application because he failed to submit a police report.

The court will allow the Government to submit a second motion to dismiss if it so desires. It must file any such motion within 60 days.

Dated at Burlington, in the District of Vermont, this 17th day of March, 2026.

Geoffrey W. Crawford, Judge
United States District Court

15