**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF VERMONT**

| | |
|---|---|
| **LANSANA MANSARAY,**<br>Plaintiff,<br><br>v.<br><br>**U.S. CITIZENSHIP AND IMMIGRATION SERVICES, et al.,**<br>Defendants. | **Case No**. 2:24-CV-01101<br><br><br>**Hon. Geoffrey W. Crawford**<br>United States District Judge |

### PLAINTIFF'S SURREPLY IN FURTHER OPPOSITION TO DEFENDANTS' SECOND MOTION TO DISMISS

I, Lansana Mansaray, proceeding pro se, respectfully submit this surreply to address the new evidence and arguments introduced by Defendants for the first time in their Reply Memorandum (Doc. 49) and the accompanying Supplemental Declaration of Sarah Wright (Doc. 49-1). Defendants have filed three new exhibits — Exhibit L (the 2013 Form I-693 medical examination record), Exhibit M (a law enforcement query of the New York DMV database), and Exhibit N (certified judicial records from my 2016 guilty plea). I ask this Court to grant leave to file this surreply, and upon review, to deny Defendants' motion in its entirety.

The Government's new exhibits do not rehabilitate its position. They deepen the problem. Exhibit M, which the Government characterizes as proof that I held the New York driver's license number at issue, is in fact a record of an expired learner's permit — not a driver's license — that had lapsed more than four months before the 2014 sexual assault incident and more than two years before my 2016 arrest. Exhibit L, the 2013 medical examination form, confirms only that I presented an ID to a physician in August 2013, when that permit was still valid. Neither exhibit resolves — or even speaks to — the central legal violation in this case.

That violation is this: 8 C.F.R. § 103.2(b)(16)(ii) mandates that a statutory eligibility determination 'shall be based only on information contained in the record of proceeding which is disclosed to the applicant or petitioner.' USCIS based my good moral character determination — the sole disputed element — in part on Exhibit K (the 2014 Sexual Assault Incident Report) and Exhibit D (the 2016 Police Criminal Complaint including its Affidavit of Probable Cause). Neither document was disclosed to me during adjudication. Whether or not the identifying information in those documents was accurate, the disclosure violation is complete. The regulation does not say 'shall be disclosed unless the information is later validated.' It says shall. The Government has not cited a single case holding otherwise.

The Government's new exhibits are also irrelevant for a second, independently sufficient reason: as the Government itself argues, the accuracy of the driver's license number is not the point, because I am not contesting mistaken identity. Reply at 5. If that is true — and it is true — then what remains is a closed, no-action sexual assault report that USCIS used against me without disclosure, for the bare fact of my notation as a 'person of interest.' That is not adjudication. That is a due process violation.

## ARGUMENT

**EXHIBIT M DOES NOT ESTABLISH THAT I POSSESSED A NEW YORK DRIVER'S LICENSE — AND ITS EXISTENCE IS LEGALLY IRRELEVANT TO MY NONDISCLOSURE CLAIM IN ANY EVENT.**

*A. Exhibit M Is a Record of an Expired Learner's Permit, Not a Driver's License.*

The Government asserts that Exhibit M 'appears to show that Plaintiff had, in fact, been issued a New York driver's permit that had expired in 2014.' Reply at 3. That

characterization is correct as far as it goes, but it is significantly less than what the Government implies. Exhibit M is a law enforcement database query reflecting the following:

| Field | Value in Exhibit M |
|---|---|
| Document Type | LEARNER'S PERMIT — 'PERMITS ONLY' (Class D, Non-Commercial) |
| Permit Status | EXPIRED |
| Permit Expiration Date | February 19, 2014 |
| Date of 2014 Sexual Assault Report (Ex. K) | June 27, 2014 — four months AFTER expiration |
| Date of 2016 Arrest (Ex. D) | August 23, 2016 — more than two years AFTER expiration |

The Exhibit M database record expressly states: 'DRIVER LICENSE NON-COMMERCIAL CLASS CODE:  PERMITS ONLY' and 'DRIVER LICENSE PERMIT STATUS: EXPIRED.' This is not a driver's license. It is a learner's permit. And it had been expired for months before the first incident and years before the second. The Government's suggestion that two police officers — four months and two years after expiration, respectively — accurately recorded identifying information from a document I no longer possessed strains credulity. Exhibit M does not validate the police records. It raises an additional question the Government has not answered.

Exhibit L, the 2013 Form I-693 medical examination, confirms only that I presented an ID bearing the number 998 478 658 to a physician on August 1, 2013 — while

the permit was still valid. That is fully consistent with the record: I had a New York learner's permit that expired on February 19, 2014. Nothing in Exhibit L or Exhibit M explains how or why a police officer in June 2014 or August 2016 would have recorded information from a permit I no longer held.

## B. Whether the Permit Existed Is Legally Irrelevant to the Nondisclosure Claim Under 8 C.F.R. § 103.2(b)(16)(ii).

Even assuming, for purposes of argument, that Exhibit M and Exhibit L together established that the permit number appearing in both police records was accurate, the Government's argument fails as a matter of law. The nondisclosure claim under 8 C.F.R. § 103.2(b)(16)(ii) does not turn on whether the information was accurate. It turns on whether the documents were disclosed.

The regulation is unambiguous: 'A determination of statutory eligibility shall be based only on information contained in the record of proceeding which is disclosed to the applicant or petitioner.' 8 C.F.R. § 103.2(b)(16)(ii) (emphasis added). The mandate is procedural and absolute. USCIS does not satisfy it by pointing to information the agency believes to be accurate. It satisfies it by disclosing the documents it intends to rely upon. The purpose of the regulation is precisely to give the petitioner the opportunity to look at the document and say: 'This entry is wrong. This summary is incomplete. This report was closed without action the same day it was filed. Let me show you my Pennsylvania ID.' I was denied that opportunity because I was never shown Exhibit K or — in its reliance-upon form with the Affidavit of Probable Cause — Exhibit D.

This Court has already recognized this principle. Doc. 39 at 13 (citing Naiker v. USCIS, 352 F. Supp. 3d 1067, 1078 (W.D. Wash. 2018)) ('a summary cannot disclose what is wrong with a document'). No new exhibit changes that holding. The question on this motion is not whether the permit number was accurate. The question

is whether I had a fair opportunity to confront and rebut the specific documents used against me. I did not. That claim is cognizable and it survives.

**THE GOVERNMENT CONFLATES TWO INDEPENDENT REGULATORY REQUIREMENTS AND APPLIES THE WRONG STANDARD.**

Defendants' Reply relies principally on 8 C.F.R. § 103.2(b)(16)(i), which limits USCIS's pre-decisional notification obligation to derogatory information 'of which the applicant or petitioner is unaware.' Reply at 4. The Government then argues that because I was a participant in my criminal proceedings, I was 'aware' of the police criminal complaint, and therefore no disclosure was required. This argument misidentifies the operative regulation.

Subsection (i) and subsection (ii) are independent provisions addressing different obligations. Subsection (i) governs USCIS's notification duty — when must the agency proactively advise a petitioner of derogatory information. Subsection (ii) governs the evidentiary basis for the final decision — what documents USCIS may rely upon in making a statutory eligibility determination. My surviving claim is grounded in subsection (ii), not subsection (i). Even if the Government were correct that subsection (i) imposed no notification obligation for information in my criminal record, that does not authorize USCIS to base its eligibility determination on documents it chose not to disclose. No court has held that the 'unaware' carve-out in subsection (i) swallows the mandatory disclosure requirement in subsection (ii). The Government has cited no such case, because none exists.

Moreover, even on the Government's own terms, the 'awareness' argument fails as to Exhibit K entirely. The 2014 Sexual Assault Incident Report was not part of my criminal case. I was never charged, never arrested, and never a party to any proceeding arising from that report. It was 'CLOSED — NO FURTHER ACTION'

on the day it was filed. I could not have been 'aware' of the specific contents of that document in the legally relevant sense — the sense in which a petitioner knows what a document says and is prepared to rebut it — without having seen it. An RFE reference to the existence of a sexual assault allegation does not constitute disclosure of the report. A summary cannot disclose what is wrong with the original.

**THE GOVERNMENT'S CLAIM THAT I SUBMITTED EXHIBIT D AND WAS THEREFORE 'AWARE' OF IT IS BOTH LEGALLY INSUFFICIENT AND FACTUALLY MISLEADING.**

The Government asserts that because my RFE response (Ex. I) listed 'Police Criminal Complaint' among its enclosures, I possessed that document and USCIS was not required to disclose it. Reply at 4. This argument fails for four independent reasons.

First, Exhibit O, attached to this Sur Reply, is a true and correct copy of my November 22, 2022 email request to Amy Kapp, Chief Deputy of the Office of the Prothonotary and Clerk of Courts for Venango County, Pennsylvania. In that email, I requested a copy of the Oil City Police Department arrest report from my 2016 criminal case file. The email chain shows:

· I made this request on November 22, 2022—more than one year after USCIS denied my VAWA petition on November 19, 2021.

· I did not possess the Police Criminal Complaint during the administrative proceedings.

· If I had possessed the document "from nearly the start," I would not have needed to request it from the state court in 2022.

Second, a petitioner's submission of a document to the agency is not equivalent to the agency's disclosure of that document to the petitioner under 8 C.F.R. §

103.2(b)(16)(ii). The regulation does not say 'based only on information already in the petitioner's possession.' It says 'based only on information... which is disclosed to the applicant or petitioner.' Disclosure by the agency means the agency has identified the specific document, specified the adverse significance it is assigning to it, and given the petitioner an opportunity to respond to that specific use. USCIS never told me it was relying on the Affidavit of Probable Cause within the Criminal Complaint, including the witness characterizations it contains, as evidence of bad moral character. That is not disclosure under the regulation.

Third, even if I had the document, I did not know which entries USCIS would find significant or how it would weight the affidavit's characterizations against my own submitted personal statement. Due process requires notice not just of the document's existence, but of the specific grounds on which the agency intends to act adversely. Mathews v. Eldridge, 424 U.S. 319, 333 (1976). USCIS provided neither.

The Government argues that because I submitted the Police Criminal Complaint (Exhibit D) to USCIS in response to the RFE, I "would have had access to that document from nearly the start." Reply at 4. This assertion is demonstrably false.

The Government's assertion is not merely unsupported—it is contradicted by the evidentiary record. This Court cannot accept the Government's factual claim when the record (Exhibit O) proves otherwise.

Fourth, and most critically, this argument does not extend to Exhibit K. There is no dispute that I did not submit, and was not shown, the 2014 Sexual Assault Incident Report. No listing in any RFE enclosure includes the 2014 report. USCIS used that document in a statutory eligibility determination without disclosing it to me in any form that would have satisfied § 103.2(b)(16)(ii). The Government's 'awareness' defense is legally insufficient and factually inapplicable to the document that most directly supports my nondisclosure claim.

**THE GOVERNMENT'S "NO PREJUDICE" ARGUMENT CONCEDES THAT THE NONDISCLOSURE VIOLATION WAS CENTRAL TO THE AGENCY'S DECISION**

**The Government argues that my extensive discussion of the driver's license number demonstrates that I suffered no prejudice from USCIS's failure to disclose the sexual assault report because, had I truly been unable to rebut the report, I would have said so. Reply at 5–6. That argument is mistaken.**

**My response to the Request for Evidence demonstrates that I was aware of the existence of a sexual assault allegation and provided my account of the events. However, USCIS never disclosed the actual police report (Exhibit K). As a result, I had no opportunity to challenge the specific contents of that report— including the driver's license number that I now know was inaccurate— because I was never permitted to see it. The fact that I offered a general denial does not establish an absence of prejudice. Rather, it demonstrates that I was forced to defend myself against a document that USCIS relied upon but refused to disclose.**

**The Government's argument further confirms that the driver's license number itself is immaterial to the underlying sexual assault allegation. Reply at 5–6. If that is so, then the Government must explain what legitimate purpose Exhibit K served in USCIS's good moral character determination. The record supplies the answer: USCIS relied on Exhibit K solely for the fact that I was identified as a "person of interest" in a sexual assault complaint that was closed without action on the very day it was reported. That is the only adverse information contained in Exhibit K. Yet USCIS relied upon that information without ever disclosing the report to me.**

**That is precisely the type of undisclosed adverse evidence that the mandatory disclosure requirement of 8 C.F.R. § 103.2(b)(16)(ii) was enacted to prevent.**

**THE GOVERNMENT'S REPLY DIRECTLY CONTRADICTS ITS OWN MOTION TO DISMISS — THE CONVICTION CANNOT SIMULTANEOUSLY BE AN 'INDEPENDENT' BAR AND NOT A 'CATEGORICAL' BAR.**

In their opening Second Motion to Dismiss (Doc. 45), Defendants made the following argument with unambiguous finality:

> *'[N]otwithstanding any other evidentiary submissions, the agency was bound to give effect to Plaintiff's plea-based criminal conviction, which independently constituted sufficient grounds on which to determine that Plaintiff failed to carry his burden of demonstrating that he was a person of good moral character.' Doc. 45 at 18 (emphasis added).*

In their Reply filed just eighteen days later (Doc. 49), Defendants made the following argument with equal confidence:

> *'USCIS did not treat Plaintiff's criminal conviction as a categorical bar to a finding of good moral character under § 1101(f).' Doc. 49 at 8 (emphasis added).*

These two positions are irreconcilable. A conviction that 'independently' and 'notwithstanding any other evidentiary submissions' constitutes 'sufficient grounds' for denial is, by definition, a categorical bar. The word 'independently' means: without regard to anything else. The phrase 'notwithstanding any other evidentiary submissions' means: this alone decides the matter. That is what a categorical bar does. The Government cannot use the word 'independently' in its opening brief and

then disclaim a 'categorical' approach in its reply. The contradiction is not a matter of emphasis or framing. It is a logical impossibility.

This Court should treat the Government's opening position — that the conviction independently and sufficiently supported denial — as a concession that forecloses the Reply's recharacterization. A party cannot take a definitive legal position in a dispositive motion, draw an adverse circuit-court response in the opposition, and then silently retreat to an inconsistent position in the reply. Judicial estoppel bars a party from asserting positions inconsistent with those it has successfully advanced in prior proceedings. New Hampshire v. Maine, 532 U.S. 742, 749 (2001). While judicial estoppel typically applies across proceedings, the principle reflects the deeper rule that 'a party should not be permitted to play fast and loose with the courts.' King v. Herbert J. Thomas Mem'l Hosp., 159 F.3d 192, 196 (4th Cir. 1998). Within a single dispositive motion sequence — opening brief, response, reply — the Government's shifting positions should be held against it, not rewarded.

The significance of this contradiction cannot be overstated for the appellate record. If the conviction independently supported denial, then Hernandez-Cruz — which holds that a conviction under the identical statute is not a CIMT — is directly controlling, and the Government's opening brief is foreclosed by binding Third Circuit precedent. Hernandez-Cruz v. Att'y Gen., 767 F.3d 294 (3d Cir. 2014). If the conviction did not independently support denial, then the denial rested on a holistic good moral character assessment — one conducted through proceedings in which I was denied access to both police records used against me, penalized for failing to obtain a document I could not physically retrieve, and deprived of the opportunity to rebut either document's contents. On the Government's own alternative framing, the procedural violations directly caused the adverse result.

The Government's Reply attempts to save itself from Hernandez-Cruz by retreating to the catchall provision of 8 C.F.R. § 204.2(c)(1)(vii). That provision requires a finding that the petitioner failed to establish 'extenuating circumstances.' But if the conviction was independently sufficient — as the Motion to Dismiss asserts — USCIS never needed to reach extenuating circumstances at all. The Government cannot have it both ways: either the conviction alone was enough (in which case Hernandez-Cruz controls and the denial is unlawful), or it was not enough without a holistic weighing (in which case the procedurally tainted proceeding — built on undisclosed, unchallenged documents — cannot be the basis for a lawful adverse determination).

| Doc. 45 — Second Motion to Dismiss (May 29, 2026), p. 18 | Doc. 49 — Reply (June 16, 2026), p. 8 |
|---|---|
| *"[T]he agency was bound to give effect to Plaintiff's plea-based criminal conviction, which independently constituted sufficient grounds on which to determine that Plaintiff failed to carry his burden." (Emphasis added.)* | *"USCIS did not treat Plaintiff's criminal conviction as a categorical bar to a finding of good moral character under § 1101(f)." (Emphasis added.)* |
| **RESULT: If true — Hernandez-Cruz directly controls and bars this holding as a matter of binding Third Circuit law.** | **RESULT: If true — the holistic determination was conducted through a procedurally tainted proceeding and must be redone.** |

Either column of this table requires denial of the motion. The Government chose the left column in its opening brief. Hernandez-Cruz occupies that column with

controlling authority. The Government fled to the right column in its reply. The procedural violations documented throughout this surreply occupy that column. There is no third column. This motion must be denied.

## THE GOVERNMENT'S CLAIM THAT PLAINTIFF CONCEDED THE ACCARDI ARGUMENT IS WRONG — AND THE AGENCY'S OWN LANGUAGE FORECLOSES THE GOVERNMENT'S RECHARACTERIZATION.

The Government asserts that I 'effectively conceded' the Accardi claim by failing to address it adequately in my opposition. Reply at 6-7. This is not accurate. The Accardi violation is addressed at pages 14-15 of my opposition (Doc. 48). The argument was preserved. Under Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006), this Court must read my pro se pleadings to raise the strongest arguments they suggest — including arguments that may be imperfectly articulated.

The Government next argues that the denial was based on my 'overarching failure to demonstrate that he is a person of good moral character,' not specifically on my failure to provide the arrest report. Reply at 7. This recharacterization cannot be reconciled with the language USCIS actually used. The denial states: 'The record does not contain satisfactory evidence... because you did not provide your arrest record.' USCIS Decision at 3 (emphasis added). The USCIS Policy Manual states: 'a self-petition may not be denied for failure to submit a particular piece of evidence.' USCIS Policy Manual, Vol. 3, Part D, Ch. 5, § B(2). These two sentences, read together, state the Accardi violation in full. The denial uses the prohibited reasoning in its own language. That the agency also engaged in other analysis does not cure a stated reason for denial that contravenes the agency's own mandatory policy.

The Second Circuit has held that an agency 'cannot demand compliance with an impossible condition and then base an adverse decision on noncompliance.' Francis

v. Gonzales, 442 F.3d 773, 778 (2d Cir. 2006). I was deported to Sierra Leone two months after filing my petition. The Oil City Police Department required in-person appearance for records requests. I faxed the Police Chief. My request was denied. I documented this impossibility in writing. The documentation is preserved in Exhibit J to the Wright Declaration. The Policy Manual contains no exception for the impossibility of in-person retrieval after deportation. The Government does not acknowledge, let alone rebut, the Francis holding.

## DISMISSAL WHILE 42 PAGES OF MY ADJUDICATIVE FILE REMAIN WITHHELD WOULD BE REVERSIBLE ERROR.

This Court stayed Plaintiff's Motion to Compel (Doc. 40) pending resolution of the instant motion. The 42 withheld pages sit in the same file that produced: two police records containing the same expired learner's permit number; a physician's form that the Government now relies upon as evidence; a DMV query that the Government withheld through FOIA until this litigation; and documents that Defendants' counsel has described as including my estranged wife's naturalization certificate, NYPD complaints, and a driver's license of uncertain provenance.

If those 42 pages contain additional undisclosed evidentiary materials used against me, that is another violation of § 103.2(b)(16)(ii). If they contain documents from my abuser used to make adverse determinations against me, that is an independent violation of VAWA's confidentiality statute, 8 U.S.C. § 1367. The Government cannot seek dismissal based on a record it made incomplete. Heckler v. Community Health Servs., 467 U.S. 51, 59 (1984). Whatever the 42 pages contain, this Court will need to address the Motion to Compel to resolve this case correctly. The only question is whether to do so before or after a dismissal motion that the record does not support.

Granting dismissal now would preserve the most contested factual and legal questions for an appeal that will be argued on an incomplete record. Denying dismissal and ordering production resolves those questions once, on a complete record, and allows final disposition in a single round. Judicial economy and the interest of justice point in the same direction.

## CONCLUSION

The Government's new exhibits do not cure the nondisclosure violation at the core of this case. They deepen it. Exhibit M confirms an expired learner's permit — not a driver's license — that had lapsed before either police incident. Exhibit L confirms only that I presented a valid ID to a physician in 2013. Neither exhibit changes the governing law: 8 C.F.R. § 103.2(b)(16)(ii) required USCIS to base my statutory eligibility determination only on disclosed information. USCIS relied on two undisclosed police records, neither of which I was ever shown or permitted to rebut. That violation is complete and cannot be cured by post-hoc production of exhibits in litigation.

The Government's remaining arguments — that I was 'aware' of the criminal complaint, that the license number is irrelevant, that the conviction independently supports denial, that I conceded the Accardi claim — are each addressed above and are each without merit. Not one of them establishes that no relief is possible as a matter of law, which is the standard this motion must meet.

I respectfully request that this Court: (1) grant leave to file this surreply; (2) Reject Defendants response to my Opposition to their second Motion to Dismiss as untimely.

(3)DENY Defendants' Second Motion to Dismiss in its entirety; (4) Lift the stay on Plaintiff's Motion to Compel (Doc. 40) and order production of the 42 withheld pages; and (5) allow this matter to proceed to a full merits hearing on the complete record.

In the alternative, should the Court identify any pleading deficiency, I respectfully request leave to amend under Fed. R. Civ. P. 15(a)(2). Dismissal with prejudice would be particularly unjust on a record that remains, by the Government's own choice, incomplete.

Respectfully submitted,

s/ Lansana Mansaray

Lansana Mansaray, Plaintiff Pro Se

P.O. Box NG 508, Nungua, Ghana, West Africa

Dated: June 17, 2026

## **CERTIFICATE OF SERVICE**

I certify that on June 16, 2026, I served a true and correct copy of the foregoing Surreply via ECF and electronic mail to:


Jonathan A. Ophardt (jonathan.ophardt@usdoj.gov)

Benjamin Weathers-Lowin (ben.weathers-lowin@usdoj.gov)

U.S. Attorney's Office for the District of Vermont

11 Elmwood Avenue, 3rd Floor, Burlington, VT 05401


s/ Lansana Mansaray

 

# Request for original arrest report for child endangerment charges August 23, 2016.

8 messages

---

**Lansana Mansaray** <lansanamansaray2070@gmail.com>                    Tue, Nov 22, 2022 at 3:14 PM
To: Amy Kapp <akapp@co.venango.pa.us>

Dear Ms. Amy,

Kindly assist me to procure from the prothonotary  original of the Oil City Police Dept. arrest report in my case file.

In anticipation of favourable response, I express my best wishes for thanksgiving and the holidays.

Regards,

Lansana

---

**Amy Kapp** <akapp@co.venango.pa.us>                    Tue, Nov 22, 2022 at 6:59 PM
To: Lansana Mansaray <lansanamansaray2070@gmail.com>

Hello Lansana,


 Please see the attached file, as per your request.



# Amy S. Kapp

Chief Deputy

Office of the Pronthonotary and Clerk of Courts

Venango County

814-432-9580

akapp@co.venango.pa.us

**Venango County**
*Pennsylvania*

**From:** Lansana Mansaray <lansanamansaray2070@gmail.com>
**Sent:** Tuesday, November 22, 2022 10:14 AM
**To:** Amy Kapp <akapp@co.venango.pa.us>
**Subject:** Request for original arrest report for child endangerment charges August 23, 2016.

**CAUTION:** This email originated from outside of your organization. Do not click links, open attachments or reply, unless you recognize the sender's email address and know the content is safe.

[Quoted text hidden]

**WARNING: CONFIDENTIALITY NOTICE**

This electronic message and its attachments may include information from Venango County that is confidential and may be protected under Federal and/or State law. This information is intended to be for the use of the intended addressee only. The improper use of this information is prohibited. If you have received this e-mail in error, please notify us by telephone at (814) 432-9126 immediately or by e-mail at kkoyack@co.venango.pa.us so that we may arrange for the appropriate retrieval of this document at no cost to you.

**AAAAD9F8.TIF**
134 KB

---

Lansana Mansaray <lansanamansaray2070@gmail.com>                    Tue, Nov 22, 2022 at 7:31 PM
To: Amy Kapp <akapp@co.venango.pa.us>

Thanks a lot Ms, Amy,

God bless you.
[Quoted text hidden]

---

Lansana Mansaray <lansanamansaray2070@gmail.com>                    Tue, Nov 22, 2022 at 7:58 PM
To: glabensltd@gmail.com

[Quoted text hidden]

**3 attachments**

**image002.jpg**
9 KB

**image004.jpg**
2 KB

**AAAAD9F8.TIF**
134 KB

# WARNING: CONFIDENTIALITY NOTICE

This electronic message and its attachments may include information from Venango County that is confidential and may be protected under Federal and/or State law. This information is intended to be for the use of the intended addressee only. The improper use of this information is prohibited. If you have received this e-mail in error, please notify us by telephone at (814) 432-9126 immediately or by e-mail at kkoyack@co.venango.pa.us so that we may arrange for the appropriate retrieval of this document at no cost to you.

| GENDER | DOB 02/19/1978 | POB | | Add'l. DOB | Co-Defendants? ☐ |
|---|---|---|---|---|---|
| ☒ Male ☐ Female | First Name / AKA | Middle Name | Last Name | | Gen. |

| RACE | ☐ White | ☐ Asian | ☒ Black | ☐ Native American | ☐ Unknown |
|---|---|---|---|---|---|
| ETHNICITY | ☐ Hispanic | ☒ Non-Hispanic | | ☐ Unknown | |

**HAIR COLOR**: ☐ Gry (Gray) ☐ Red (Red/Aubn) ☐ SDY (Sandy) ☐ BLU (Blue) ☐ PLE (Purple) ☐ BRO (Brown) ☐ Blk (Black) ☐ Ong (Orange) ☐ WHI (White) ☒ XXX (Ink./Bald) ☐ GRN (Green) ☐ PNK (Pink) ☐ Bln (Blonde / Strawberry)

**EYE COLOR**: ☐ Blk (Black) ☐ Blu (Blue) ☒ BRO (Brown) ☐ GRN (Green) ☐ GRY (Gray) ☐ HAZ (Hazel) ☐ MAR (Maroon) ☐ PNK (Pink) ☐ MUL (Multicolored) ☐ XXX (Unknow

| Driver License | State NY | License Number 998478658 | Expires 02/19/2014 | WEIGHT (lbs.) |
|---|---|---|---|---|
| DNA | ☐ YES ☒ NO | DNA Location | | |
| FBI Number | | MNU Number | | Ft. HEIGHT In. |
| Defendant Fingerprinted | ☐ YES ☒ NO | | | 5    07 |
| Fingerprint Classification | | | | |

### DEFENDANT VEHICLE INFORMATION

| Plate # | State | Hazmat ☐ | Registration Sticker (MM/YY) | Comm'l Veh Ind. ☐ | School Veh. ☐ | Oth. NCIC Veh. Code | Reg. Same as Def. |
|---|---|---|---|---|---|---|---|
| VIN | | Year | Make | Model | Style | Color | ☐ |

Office of the attorney for the Commonwealth   ☐ Approved   ☐ Disapproved because: _____

(The attorney for the Commonwealth may require the complaint, arrest warrant affidavit, or both, be approved by the attorney for the Commonwealth prior to filing. See PA. R. Crim. P 507.)

(Name of the attorney for the Commonwealth - Please Print or Type)    (Signature of the attorney for the Commonwealth)    (Date)

I, **SR. PTLM KEVIN B. DALY**     **060/27333**
(Name of the Affiant)    PSP/MPOETC - Assigned Affiant ID Number & Badge #